UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI FREEBORN,<br><br>                    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Commissioner of Social Security,<br><br>                    Defendant. | Case No.:  15cv02118 JAH-RBB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. Nos. 15, 18]** |

## INTRODUCTION

Plaintiff seeks review of the Social Security Commissioner's final decision denying benefits.  After a thorough review of the parties' submissions and for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment and GRANTS IN PART AND DENIES IN PART Defendant's cross-motion for summary judgment.

## BACKGROUND

Plaintiff was born on August 14, 1968 and was 45 years of age at the time of the hearing before the Administrative Law Judge ("ALJ").  AR[1] at 41, 176.  She alleges she

---

[1] AR refers to the administrative record.

1  has been unable to work since August 15, 2004, as a result of a disabling condition.  *Id.* at

2  46, 176.  She filed an application for supplement security income on March 20, 2012.  *Id.*

3  at 176.  The Commissioner of the Social Security Administration denied the claim on June

4  28, 2012 and denied the claim again upon reconsideration.  I̲d̲. at 106, 109.  Plaintiff

5  requested a hearing and testified at the hearing on July 17, 2014.  *Id.* at 39, 126.  The ALJ

6  issued an unfavorable decision on June 20, 2014.  *Id.* at 21.  Plaintiff filed a request for

7  review of the ALJ's decision and the Appeals Council denied the request.  *Id.* at 1, 17.

8        Plaintiff, appearing through counsel, filed a complaint seeking review of the

9  Commissioner's final decision denying benefits on September 22, 2015.  *See* Doc. No. 1.

10  Defendant filed an answer and the administrative record on June 30, 2016.  *See* Doc. Nos.

11  12, 13.

12        Thereafter, Plaintiff filed the pending motion for summary judgment and Defendant

13  filed an opposition and cross-motion for summary judgment.  *See* Doc. Nos. 15, 18, 19.

14  Plaintiff filed a reply.  *See* Doc. No. 21.

## DISCUSSION

**I.  Legal Standards**

**A.  Qualifying for Disability Benefits**

18        To qualify for disability benefits under the Act, an applicant must show that: (1) she

19  suffers from a medically determinable impairment that can be expected to result in death

20  or that has lasted or can be expected to last for a continuous period of not less than twelve

21  months; and (2) the impairment renders the applicant incapable of performing the work

22  that she previously performed or any other substantially gainful employment that exists in

23  the national economy.  *See* 42 U.S.C. § 423(d)(1)(A), 2(A).  An applicant must meet both

24  requirements to be "disabled." *Id.*

25        The Secretary of the Social Security Administration has established a five-step

26  sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§

27  404.1520, 416.920.  Step one determines whether the claimant is engaged in "substantial

28  gainful activity."  If she is, disability benefits are denied.  20 C.F.R. §§ 404.1520(b),

416.920(b).  If she is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404 Appendix 1 to Subpart P.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If a condition "falls short of the [listing] criterion" a multiple factor analysis is appropriate.  *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003).  Of such analysis, "the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  *Id*. at 1182 (quoting 42 U.S.C. § 423(d)(2)(B)).  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant cannot perform her previous work, the fifth and final step of the process determines whether she is able to perform other work in the national economy considering her age, education, and work experience.  The claimant is entitled to disability benefits only if she is not able to perform other work.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

**B.  Judicial Review of an ALJ's Decision**

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. § 405(g). The scope of judicial review is limited.  The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error."  *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (citing *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).  If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (citing *Allen v. Secretary of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984)).  When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

However, even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).  Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administrator for further proceedings.  *Id.*  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

## II.  The ALJ's Decision

In the present case, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 20, 2012 and has severe impairments, including depression, anxiety, migraine headaches and chronic pain, that cause more than minimal limitations on her ability to perform basic work activities.  AR at 26.  The ALJ determined Plaintiff does not

have an impairment or combination of impairments that meet or are medically equal in severity to one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1. *Id*. In making this determination, the ALJ found Plaintiff has mild restrictions in daily living, mild difficulties in social functioning and moderate difficulties in concentration, persistence or pace. *Id*. at 27.  Additionally, the ALJ found Plaintiff had no episodes of decompensation of extended duration. *Id*.

The ALJ found Plaintiff has the residual functional capacity to perform light work as defined by 20 CFR 416.976(b) and can perform simple repetitive tasks with no public contact and should avoid moving machinery and unprotected heights. *Id*.

The ALJ also found Plaintiff's allegations of severe symptoms are not supported by the clinical evidence. *Id*. at 28.  Relying on the opinions of consultative examiners Dr. Chang and Dr. Rodriguez and the state agency medical consultants, the ALJ determined that while the medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's allegations of intensity, persistence and limiting effects were not entirely credible. *Id*. at 30. 31, 32.

The ALJ determined Plaintiff was unable to perform her past relevant work but there are jobs in the national economy in significant numbers that the Plaintiff can perform. *Id*. at 33.  Ultimately, the ALJ concluded Plaintiff has not been under a disability as defined by the Act from the date of her application. *Id*. at 34.

## III.  Analysis

Plaintiff argues the ALJ erred in assessing the opinion of Plaintiff's treating physician Dr. Patricia Christine, the ALJ committed reversible error by not evaluating Plaintiff's fibromyalgia, the ALJ's step five finding is not supported by substantial evidence and the ALJ's adverse credibility determination is not supported by substantial evidence.

## A.  Opinion of the Treating Physician

Plaintiff argues the ALJ committed reversible error in assessing the opinion of her treating physician Dr. Patricia Christie that Plaintiff would miss more than four days of

work per month because of headaches.  She maintains the ALJ called a psychiatrist, Dr. Robert McDevitt, to testify at the hearing and he testified that he evaluated Plaintiff's headaches from a psychiatric standpoint because he did not see any treatment for headaches in Plaintiff's medical records.  Plaintiff contends, despite Dr. McDevitt's lack of expertise, his request that the ALJ have a neurologist review the records to determine the effect of headaches, and his failure to properly review pertinent records, the ALJ improperly used Dr. McDevitt's testimony to reject Dr. Christie's opinion regarding headaches.  Plaintiff argues Dr. McDevitt's opinion cannot serve as a specific and legitimate reason to reject Dr. Christie's opinion because the opinion was outside his designated expertise.

Plaintiff maintains Dr. Christie's opinion is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with other substantial evidence in the record.  Plaintiff requests the Court credit Dr. Christie's opinion that she would miss more than four days of work per month as true.  She further requests the Court reverse and remand the case with instructions to calculate and pay benefits because the record is fully developed and the vocational expert ("VE") testified that if Plaintiff had the type of disabling headaches contemplated by Dr. Christie's opinion, she could not perform competitive work and would be disabled.

Defendant argues the ALJ properly rejected Dr. Christie's opinion.  Defendant maintains Dr. Christie's opinion is inconsistent with the record, including her own treatment notes.  Specifically, Defendant contends Plaintiff's treatment records show a past medical history that included migraines, but Dr. Christie's treatment plan for Plaintiff did not include migraine headache treatment.  Additionally, Defendant argues Dr. Christie's treatment notes do not support her opinion that Plaintiff suffered from debilitating headaches that would prevent her from working.  Defendant contends Dr. Christie essentially opined that Plaintiff's migraines caused her to be permanently bed-ridden but this opinion is inconsistent with Plaintiff's daily activities, which included raising two minor children.  Defendant maintains rejecting an opinion which conflicts with the Plaintiff's activities serves as a specific and legitimate reason for discounting the

physician's opinion.  Defendant contends the fact that Dr. Christie did not note recurring weeklong migraines also undermines her opinion that Plaintiff was permanently bed-ridden with migraines given the extreme nature of the opinion.  Additionally, Defendant argues the ALJ properly reconciled the differences in the medical opinion evidence and the mild clinical record to determine that Plaintiff was capable of a range of light work.

In reply, Plaintiff argues Defendant improperly focuses on reasons to reject Dr. Christie's opinion not given by the ALJ.  Nevertheless, Plaintiff argues Defendant is mistaken that Dr. Christie's medical records are inconsistent with her opinions.  She maintains the medical records specifically reference severe headaches with vomiting and urgent care, and Dr. Christie specifically prescribed Gabapentin to treat headaches and referred Plaintiff to a neurologist to follow up on headaches.

"[A]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id*.  The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Secretary of Health and Human Services*, 881 F.2d 747, 751 (9th Cir. 1989). Where the opinion of the claimant's treating physician is contradicted, and the opinion of a non-treating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence. *Andrews*, 53 F.3d at 1041.  In addition, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and

inadequately supported by clinical findings.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

In the written decision, the ALJ rejected Dr. Christie's opinion that Plaintiff would generally be precluded from performing even basic work activities, was incapable of performing even low stress jobs and would be absent from work for more than four times a month as conclusory and for failure to include specific work-related functions or medical evidence in support.  AR at 29.  The ALJ determined the opinion could not be accorded special weight because it was not an opinion as to the nature and severity of Plaintiff's impairment but an opinion about her ability to perform past work or any work which the ALJ recognized as an issue reserved to the Commissioner.  *Id*.  However, the opinion that Plaintiff will be absent from work more than four days a month due to her migraines addresses the severity of Plaintiff's alleged impairment.  Accordingly, this is not a convincing or legitimate reason for rejecting the opinion.  While the ALJ does not specifically state he relied on the opinion of the testifying doctor to reject Dr. Christie's opinion, the ALJ explains later in the written decision, that Dr. McDevitt found no evidence to support the frequency of Plaintiff's alleged severe persistent migraines.  To the extent the ALJ relied on the testimony of Dr. McDevitt to reject Dr. Christie's opinion, Dr. McDevitt testified there was no mention of headaches in Dr. Christie's treatment notes, however, Plaintiff points to records which contain information on treatment for her headaches including prescribed medication.  Defendant discusses numerous reasons to support the ALJ's rejection of Dr. Christie's opinion but those were not offered by the ALJ. Accordingly, the Court finds the ALJ failed to provide clear and convincing or even specific or legitimate reasons to reject Dr. Christie's opinion as to the limiting effects of Plaintiff's migraines.

While Plaintiff seeks an order remanding with direction to order payment of benefits, the Court finds remand to further develop the record is more appropriate.  *See Marcia*, 900 at 176.

//

15cv02118 JAH-RBB

**B.  Plaintiff's Fibromyalgia**

Plaintiff argues the ALJ also erred by failing to evaluate her fibromyalgia.  She maintains the consultative examining physician reported multiple positive tender points consistent with fibromyalgia and her treating doctor diagnosed fibromyalgia after conducting blood tests.  She contends the ALJ's failure to evaluate her fibromyalgia to determine whether it was a medically determinable impairment, at step two of the evaluation, was error.

Defendant argues the ALJ committed, at worst, harmless error.  Defendant maintains the ALJ considered the examining physician's fibromyalgia diagnosis and the resulting functional limitations and gave great weight to the exertional limitations contained in the opinion rendering any error at step two harmless.

In reply, Plaintiff argues incorporating the functional limitation opinions into the residual functional capacity ("RFC") does not render the error harmless because there are treatment notes and objective tests in the medical records that support fibromyalgia limitations, including pain and the inability to perform work at even a sedentary level that were not included in the RFC.

Step two requires an ALJ to determine whether the claimant has a medically severe impairment or combination of impairments.  In the decision, the ALJ found Plaintiff suffered from depression, anxiety, migraine headaches and chronic pain but did not discuss Plaintiff's fibromyalgia diagnosis.  *Id*. at 26.  However, included in the ALJ's determination of Plaintiff's RFC are limitations resulting from Plaintiff's fibromyalgia as opined by a consulting physician.  Failure to designate an impairment as severe at step two may be harmless if the ALJ incorporates the functional limitations from that impairment in the remaining steps of the evaluation.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Despite the inclusion of fibromyalgia and resulting limitations in the RFC, Plaintiff contends the error was not harmless because records support an inability to perform sedentary work.  Plaintiff points to the same limitations included in the RFC that support light work and her treating doctor's diagnosis of fibromyalgia which does not include any

discussion regarding limitations.   This Court's own review of the records found no additional opinions as to the exertional and other limitations caused by Plaintiff's fibromyalgia.   Accordingly, the Court finds the ALJ's error for failing to include fibromyalgia in step two is harmless.

**C.  Step 5 Finding**

Plaintiff contends the ALJ's step five finding is not supported by substantial evidence because all jobs identified by the ALJ as those she can perform require frequent reaching and the reviewing doctor opined Plaintiff should be limited to occasional overhead reaching.   She maintains the ALJ recognized the reviewing doctor opined she should be limited to occasional reaching but failed to determine what weight to give the opinion or provide any reasons to reject the doctor's opinion.   Had the ALJ included the limitation to occasional bilateral overhead reaching, she argues she would not be able to perform the jobs identified at step five.   Even assuming the vocational expert's testimony contemplated reaching, Plaintiff argues, the ALJ still committed reversible error by not resolving that conflict.

Defendant argues substantial evidence supports the ALJ's finding at step five. Assuming, arguendo, that the ALJ should have included a limitation to occasional bilateral overhead reaching, Defendant contends substantial evidence still supports the ALJ's decision, rendering any error harmless.   Defendant maintains the Ninth Circuit recently found that no conflict existed between a limitation on overhead reaching and occupations that call for frequent overall reaching.   As such, Defendant argues there is no conflict between the ability to only occasionally reach overhead and the occupations identified by the ALJ that require frequent reaching.

In reply, Plaintiff maintains the DOT explains the folder position requires stacking, the hand packager job requires filling shipping cartons and putting them in a storage area, and the laundry worker job requires working a laundry press machine.   She argues it is not apparent that the jobs identified by the ALJ do not require frequent overhead reaching.

1    In the written decision, the ALJ notes the State Agency medical consultant opined

2    Plaintiff "would be limited to occasionally reach, handle, finger, and feel with the bilateral

3    upper extremities."  AR at 30.  The ALJ gave the opinion as to exertional limitations great

4    weight but did not discuss what weight he gave the non-exertional limitations.  *Id*.  At the

5    hearing, the information provided to the VE did not specifically include the limitation

6    regarding overhead reaching.  However, the ALJ determined Plaintiff could perform the

7    jobs of folder, hand packer, and laundry worker based on the VE's testimony, all of which

8    require frequent reaching.  *Id*. at 34.

9    Plaintiff points to numerous cases finding a conflict between occasional reaching

10   and frequent reaching requiring the ALJ resolve the conflict on remand.  Relying primarily

11   on the decision in *Gutierrez v. Colvin*, 844 F.3d 804 (9ᵗʰ Cir. 2016), Defendant argues there

12   is no conflict between occasional overhead reaching and the jobs listed by the ALJ which

13   all require frequent reaching.

14   The Court finds *Gutierrez* and the other cases cited by Defendant distinguishable.

15   In *Gutierrez*, the court determined there was no apparent or obvious conflict between the

16   VE's testimony that the claimant could perform the job of a cashier despite his limitation

17   for occasional overhead reaching and the Dictionary of Occupational Titles ("DOT")

18   listing frequent reaching as a requirement for the job of cashier considering how

19   uncommon it is that a cashier must reach overhead.  844 F.3d at 808.  In *Peters v. Astrue*,

20   this Court determined the VE's testimony did not conflict with the DOT because Plaintiff

21   was restricted from overhead reaching and the three identified jobs required only

22   occasional reaching.  2013 WL 5231484, *4 (S.D. Cal. 2013).  In *Ballesteros v. Colvin*, the

23   court found no apparent or actual conflict between the plaintiff's inability to repetitively

24   reach overhead and the jobs' requirement of frequent or constant reaching because the DOT

25   descriptions of the jobs showed that they do not in fact require repetitive overhead reaching.

26   2016 WL 3381280, * 15 (C.D.Cal. 2016).  In *Martinez v. Colvin*, the Court found it was

27   clear the frequent and constant reaching required by the identified jobs did not include

28   overhead reaching which the plaintiff could not perform and, therefore, no conflict existed.

15cv02118 JAH-RBB

2015 WL 5231973, *4 (E.D.Cal. 2015).  An ALJ is required to resolve any possible conflict between the expert's opinion that the applicant is able to perform certain jobs and the requirements of those jobs listed in the Dictionary.  *See Gutierrez*, 844 F.3d at 807.  Unlike the cashier position in *Gutierrez* and the jobs addressed in the cases discussed above, it is not clear how common or uncommon overhead reaching is for folders, hand packers, and laundry workers.  Accordingly, the ALJ erred in failing to address the apparent conflict between the VE's testimony and the job requirements.

**D.  Credibility Determination**

Plaintiff argues the ALJ's adverse credibility determination is not supported by substantial evidence.  She maintains there is no evidence of malingering, and the reasons given by the ALJ are not specific, clear, or convincing.  She contends the ALJ found her not credible because of her activities of daily living and that she was laid off from her last job in 2004.  She maintains the Ninth Circuit has ruled that the mere fact a claimant participates in activities of daily living does not detract from her credibility and she testified that her symptoms began to get worse after 2004 which is consistent with her medical records.

Defendant argues the ALJ properly assessed Plaintiff's credibility.  Specifically, Defendant argues the ALJ found that the objective medical evidence undermined Plaintiff's claim of disabling symptoms and determined her statements were less than credible because they did not significantly interfere with her daily activities.  Defendant maintains the ALJ did not find her less than credible because the activities themselves indicated she could work, but rather that Plaintiff's activity level suggested she had a greater overall functional capacity than she alleges.  Additionally, Defendant contends, the ALJ noted there was evidence that Plaintiff stopped working for reasons unrelated to her impairments.  Defendant argues Plaintiff's inconsistent statements as to the onset of her disability is pertinent to her credibility.

In reply, Plaintiff contends alleged onset dates are used by the agency as procedural milestones in determining eligibility for disability benefits and are often changed.  She

1    further maintains ALJs are no longer permitted to use inconsistencies in testimony or

2    perceived falsehoods to discredit claimants.

3          The ALJ's credibility finding must be properly supported by the record and

4    "sufficiently specific to assure a reviewing court that the ALJ did not arbitrarily discredit

5    a claimant's subjective testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

6    (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)).   An ALJ may consider

7    a claimant's "reputation for truthfulness, inconsistencies either in [her] testimony or

8    between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and

9    testimony from physicians and third parties concerning the nature, severity, and effect of

10   the symptoms of which [she] complains."   *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792

11   (9th Cir. 1997).   "While an ALJ may find testimony not credible in part or in whole, he or

12   she may not disregard it solely because it is not substantiated affirmatively by objective

13   medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).   Unless

14   an ALJ makes a finding of malingering based on confirming evidence, the ALJ may only

15   find an applicant not credible by making specific findings as to credibility and stating clear

16   and convincing reasons for each.   *Id*. at 883.

17         The ALJ gave little weight to Plaintiff's statements concerning the intensity,

18   persistence and limiting effects of her symptoms after determining they were not entirely

19   credible because she had not received treatment consistent with chronic pain syndrome,

20   her records did not demonstrate she reported any side effects although she testified that her

21   medications sometimes make her tired, she reported to the examining doctor that she had

22   been taking psychiatric medications since she was in her twenties and they were helpful,

23   she has never been psychiatrically hospitalized, she was involved with family and

24   individual therapy with a certified therapist at church and she described daily activities

25   which are not limited to the extent one would expect given her complaints of disabling

26   symptoms and limitations.   AR at 32.   The ALJ also explained that Plaintiff indicated that

27   her condition affects certain activities, such as lifting, squatting, bending, standing,

28   reaching, walking, sitting, kneeling, stair-climbing, remembering, completing tasks,

concentrating, understanding, and using her hands but she did not quantify any limitations or explain how the areas are affected with the exception of needing to rest for five to ten minutes after walking for one-quarter mile.  *Id*.  Additionally, the ALJ noted Plaintiff told her doctor that she lived with her two children, drove, ran errands, shopped, cooked, participated in household chores, and dressed and bathed herself and could leave home alone and handle her own finances.  *Id*.  The ALJ also stated that Plaintiff stopped working due to a business-related layoff rather than disabling impairments and there was no indication of a serious deterioration in her condition since the layoff.  *Id*. 32 – 33.

The Court finds the ALJ provided specific, clear and convincing reasons to support his findings regarding Plaintiff's credibility.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's motion for summary judgment is DENIED IN PART AND GRANTED IN PART.  The motion is GRANTED as to the opinion of Plaintiff's treating physician and the ALJ's step five finding.  The motion is otherwise DENIED.

2. Defendant's cross-motion for summary judgment is DENIED IN PART AND GRANTED IN PART.  The motion is GRANTED as to the ALJ's failure to address Plaintiff's fibromyalgia in step two and the ALJ's credibility determination.  The motion is otherwise DENIED.

3. The matter is remanded for further proceedings to address the rejection of Plaintiff's treating physician's opinion and the conflict in step five.

DATED:    November 10, 2020

_____
JOHN A. HOUSTON
United States District Judge

14